HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

E-D-S-O-,

            Petitioner,

    v.

JULIO HERNANDEZ, *et al.*,

            Respondents.

CASE NO. 2:26-cv-00785-RAJ

ORDER

## I.      INTRODUCTION

THIS MATTER comes before the Court on Petitioner E-D-S-O-'s First Amended Petition for Writ of Habeas Corpus, Dkt. # 17.  The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. The parties requested oral argument, but the Court finds oral argument is not necessary to resolve the motion.  For the reasons set forth below, the Court **GRANTS** the petition.

## II.      BACKGROUND

Petitioner is a 29-year-old citizen of Venezuela.  Dkt. # 2 ¶ 2.  On May 15, 2023, he presented himself at a port of entry and scheduled a "CBP One" appointment with immigration officials.  Dkt. # 12-1 at 3.  Immigration officials issued a Notice to Appear

ORDER – 1

("NTA") to Petitioner, charging him as inadmissible under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  Dkt. # 3-1 at 1.  Petitioner was paroled into the United States pursuant to humanitarian parole under Section 212(d)(5) of the INA.  *Id.* The term of the parole was one year, from May 15, 2023 to May 13, 2024.  Dkt. # 3-2 at 1.

After entering the United States, Petitioner lived in Texas briefly before relocating to Oregon at the end of 2023.  Dkt. # 2 ¶ 7.  On May 13, 2024, he applied for asylum with the Dallas Immigration Court.  *Id.* ¶ 8.  On January 28, 2025, he applied for Temporary Protected Status ("TPS").  *Id.* ¶ 10.  He also applied for employment authorization.  Dkt. # 15 ¶ 7.  Petitioner represents that he complied with all conditions of his parole and has no criminal history.   Dkt. # 2 ¶¶ 9, 15, 17.

On November 11, 2025, Immigration and Customs Enforcement ("ICE") agents took Petitioner into custody.  Dkt. # 11 ¶ 5.  An ICE agent's report of Petitioner's arrest states that while ICE agents were conducting a "targeted immigration enforcement operation," they "encountered" Petitioner's car.  Dkt. # 12-2 at 3.  After running Petitioner's license plate, the ICE agents determined Petitioner did not have lawful status and initiated a vehicle stop. Dkt. # 12-2 at 3.  The report states that because Petitioner "was previously living in Texas and failed to update his address with both the Executive Office for Immigration Review and ICE, any previous grant of an Order of Recognizance (OREC) will be revoked." *Id.*  On the day of Petitioner's arrest, ICE issued a "Cancellation of Form I-220A," purporting to revoke Petitioner's OREC.  Dkt. # 12-5.  Respondents now admit the cancellation was issued in error because an OREC was not used in Petitioner's case. Dkt. # 20 at 2 n.2.  Petitioner states he was detained without notice and an opportunity to be heard.  Dkt. # 2 ¶¶ 13–14.  Petitioner was processed and transferred to the Northwest ICE detention center, where he remains today.  Dkt. # 11 ¶ 5.

ORDER – 2

On January 27, 2026, an immigration judge ordered Petitioner removed to Ecuador pursuant to an Asylum Cooperative Agreement. *Id.* ¶ 7. Petitioner timely appealed the order of removal. *Id.* ¶ 8. The appeal remains pending. *Id.*

### III.  LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.  DISCUSSION

#### A.    Petitioner May Proceed Under a Pseudonym

Petitioner "seeks to proceed with his initials because he fears that should members of the Venezuelan government learn that he is seeking asylum from Venezuela in the United States, that will put his relatives who still reside in Venezuela at risk of being targeted for persecution." Dkt. # 17 at 2 n.2. Respondents do not oppose this request. *See generally* Dkt. # 10. "Courts in this Circuit have regularly granted plaintiffs leave to file pseudonymously in cases relating to asylum proceedings." *E.N. v. Mayorkas*, No. 24-cv-1920, 2024 WL 5711434, at *1 (W.D. Wash. Dec. 3, 2024); *see Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). The Court finds that in light of Petitioner's stated concerns and the evidence in the record, Petitioner's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing Petitioner's identity. Accordingly, the Court grants Petitioner's request.

#### B.    The Court Will Consider Petitioner's Procedural Due Process Claim

As a threshold matter, the Court must decide whether it may properly consider Petitioner's procedural due process claim. Petitioner filed his petition on March 9, 2026.

ORDER – 3

Dkt. # 1.   The petition included two claims.   In claim one, titled "Violation of the Immigration & Nationality Act 8 U.S.C. § 1254a," Petitioner argued his detention violates the statute governing treatment of TPS holders and applicants. *Id.* ¶¶ 75–80.  In claim two, titled "Violation of Fifth Amendment Right to Procedural Due Process," Petitioner argued his detention "is not rationally related to any immigration purpose," "is not the least restrictive mechanism for accomplishing any legitimate purpose," and "lacks any statutory authorization." *Id.* ¶¶ 81–90.

Respondents filed their return on March 24, 2026.  Dkt. # 10.  In the return, Respondents argue in a footnote that while Petitioner's claim two is titled "Violation of Fifth Amendment Right to Procedural Due Process," "the paragraphs framing the claim raise a substantive due process claim." *Id.* at 3 n.3.  The return also includes a short section responding to Petitioner's due process claim. *Id.* at 10 at 10.

On March 30, 2026, Petitioner filed his reply and an amended petition.  Dkts. # 14, 17.  For the first time, the reply analyzes Petitioner's detention under the factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976) and argues the detention violates due process under that test.  Dkt. # 14 at 20–25.  The amended petition adds a new claim three for "Violation of Fifth Amendment Right to Procedural Due Process – Unlawful Parole Revocation."  Dkt. # 17 ¶¶ 91–103.

The parties communicated to the Court that they intended to stand on their briefs as filed and did not intend for the amended petition to trigger a new round of briefing.  Nevertheless, on April 1, 2026, the Court issued a minute order directing the parties to file supplemental briefing regarding the procedural due process argument raised in Petitioner's reply brief and amended petition.  Dkt. # 19.  As directed by the Court, Respondents filed a supplemental brief on April 7, 2026, and Petitioner filed a supplemental brief on April 10, 2026.  Dkts. # 20, 21.

District courts have discretion to consider an issue raised for the first time in a party's reply.  *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 (9th Cir. 2001).

ORDER – 4

However, in considering the new argument, "the district court should give the non-movant an opportunity to reply." *Pierce v. San Diego Unified Port Dist.*, No. 03-cv-172, 2006 WL 8440730, at *7 (S.D. Cal. Oct. 25, 2006). Here, it appears that Petitioner raised the issue of procedural due process as analyzed under the *Mathews* test for the first time in his reply. Raising arguments for the first time in reply is disfavored. However, the title of claim two in Petitioner's original petition arguably put Respondents on notice that Petitioner may raise a procedural due process issue. In addition, the numerous cases in this district challenging similar immigration detention under a procedural due process theory may have likewise put Respondents on notice that such an argument may be raised in this case. Most significantly, the Court ordered supplemental briefing from both parties and Respondents have now had an opportunity to fully respond to Petitioner's procedural due process argument. Thus, in the particular circumstances of this case, the Court, in its discretion, will consider the issue.

### C.    Petitioner's Detention Violates Procedural Due Process

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

ORDER – 5

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the three-part test set forth in *Mathews* applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in that context. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). Respondents appear to agree that the *Mathews* test applies here. *See* Dkt. # 20 at 4–6.

### i.   Petitioner is Entitled to Due Process

The parties do not dispute that Petitioner was released on humanitarian parole under Section 212(d)(5) of the INA. Dkt. # 20 at 1; Dkt. # 13 at 6 n.1. Assuming *arguendo* that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) upon termination of his parole, Respondents must still comply with the requirements of due process. *See P.T. v. Hermosillo*, No. 25-cv-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained."); *Flores Torres v. Hermosillo*, No. 2:25-cv-02687-LK, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026) (noncitizen detained under Section 1225(b), released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), and subsequently re-detained had due process right to notice and opportunity to be heard before parole revocation); *Caisa Telenchana v. Hermosillo*, No. 26-cv-363, 2026 WL 696806, at *10–12 (W.D. Wash. Mar. 12, 2026) (same).

ORDER – 6

**ii.      Petitioner Established a Strong Liberty Interest While on Parole**

With respect to the first *Mathews* factor, the "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [due process] protects."). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). Indeed, Respondents "acknowledge that district courts have found that noncitizens released on parole have liberty interest in their continued freedom from detention." Dkt. # 20 at 4. Since being paroled into the United States on May 15, 2023, Petitioner has acquired liberty interests entitled to the protections of due process. In reasonable reliance on these liberty interests, Petitioner applied for asylum, TSP, and work authorization. Dkt. # 2 ¶¶ 8, 10; Dkt. # 15 ¶ 7. He lived in the community for two than two years without incident. Dkt. # 2 ¶¶ 9, 15, 17. The first *Mathews* factor thus weighs strongly in favor of Petitioner.

**iii.      The Risk of Erroneous Deprivation of Liberty is High.**

Turning to the second *Mathews* factor, the record suggests that Respondents "failed to comply with regulatory requirements for revoking humanitarian parole, which heightens the risk of erroneous deprivation." *Telenchana*, 2026 WL 696806, at *11; *see also Torres*, 2026 WL 145715, at *7 & n.3 ("[T]he risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation.") (collecting cases)).

Section 212(d)(5)(A) of the INA provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The provision's implementing regulations impose another requirement: to qualify for parole, the noncitizen must "present neither a security risk nor

ORDER – 7

a risk of absconding." 8 C.F.R. § 212.5(b). The implementing regulations also specify that parole may be terminated in two ways; each termination mechanism is subject to its own procedural requirements. First, parole is automatically terminated if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). If parole is automatically terminated, no written notice is required. *Id.* Second, termination may occur upon either "accomplishment of the purpose for which parole was authorized" or the decision of an authorized DHS official that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"). Under these circumstances, the noncitizen must be provided written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Once parole has been terminated, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). If this cannot be accomplished "within a reasonable time, the [noncitizen] shall again be released on parole" unless an authorized DHS official opines that "the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). In other words, "unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official." *Telenchana*, 2026 WL 696806, at *7 (citing 8 C.F.R. § 212.5(e)(2)(i)). Otherwise, the noncitizen must be returned to humanitarian parole. *Id.*

Viewed as a whole, therefore, the applicable regulatory scheme provides that, "where parole has automatically terminated upon expiration and the noncitizen is not returned to custody . . . continuation of humanitarian parole may be implied and, thereafter,

ORDER – 8

the procedures for on-notice termination apply." *Id.* (citing *Dieng v. Hermosillo*, No. 26-cv-190, 2026 WL 411857, at \*6 (W.D. Wash. Feb. 13, 2026)).

Here, the record suggests that Petitioner's initial grant of parole may have been subject to automatic termination on May 13, 2024. Dkt. # 3-2 at 1. However, Petitioner was not detained until approximately one and a half years after this date. Accordingly, the Court finds the circumstances imply the extension of Petitioner's initial humanitarian parole. *See Telenchana*, 2026 WL 696806, at \*11 (inferring extension of humanitarian parole by ICE where petitioners were not re-detained "on or near the expiration of their humanitarian parole"); *Dieng*, 2026 WL 411857, at \*6 (same). Therefore, Petitioner's parole could only be terminated upon written notice and either the "accomplishment of the purpose for which parole was authorized" or the decision of an authorized DHS official that "neither humanitarian reasons nor public benefit" warranted the continued presence Petitioner in the United States. 8 C.F.R. § 212.5(e)(2)(i). Nothing in the record shows Respondents provided Petitioner with written notice of revocation of his humanitarian parole, that the original purpose of his parole was accomplished, or that a DHS official with authority determined "neither humanitarian reasons nor public benefit" warranted continued parole.

Respondents' arguments to the contrary are unpersuasive. First, Respondents state they "do not agree" with courts in this district that have found an implied extension of parole, but Respondents provide no reason to depart from those decisions. Dkt. # 20 at 4–5. Second, Respondents argue that "even if this Court were to find an implied extension of Petitioner's parole," an ICE agent "provided written notice of Petitioner's release." *Id.* at 5. Respondents rely on the Cancellation of Form I-220A, which purports to revoke Petitioner's OREC. Dkt. # 12-5 at 2. However, this cancellation, purporting to revoke an apparently non-existent OREC, cannot reasonably be read to provide notice of termination of Petitioner's humanitarian parole. There is also nothing either in this cancellation or anything else in the record to demonstrate the purpose of Petitioner's parole was

ORDER – 9

accomplished, or that a DHS official with authority determined "neither humanitarian reasons nor public benefit" warranted continued parole. And while Respondents argue the reason for Petitioner's detention is that he failed to update his address with immigration officials, they point to no evidence that this was a requirement of Petitioner's parole. *See* Dkt. # 12-1 at 2–4 (May 15, 2023 Form I-213 documenting Petitioner's parole but not stating requirement to update address with ICE); Dkt. # 15 ¶ 7 (Petitioner's declaration stating the "DHS officers who processed me at the border never told me that I was required to keep my address updated with ICE" but "I did choose to provide my current address to immigration authorities each time I filed an application for an immigration benefit . . . .").

Of note, by virtue of his initial release on humanitarian parole, Petitioner was found not to be a flight risk or a danger to the community. Although circumstances may have changed prior to Petitioner's re-detention, Respondents' failure to adhere to applicable implementing regulations created an undue risk of erroneous deprivation in light of this previous finding. *See Telenchana*, 2026 WL 696806, at \*12. Accordingly, the second *Mathews* factor favors Petitioner.

### iv. Respondents' Interest in Re-Detaining Petitioner Without Due Process is Minimal.

With respect to the third *Mathews* factor, while the Court recognizes the government's interests in the efficient administration of immigration laws, the government is "not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *Zavorin v. Wamsley*, No. 26-cv-173, 2026 WL 309733, at \*5 (W.D. Wash. Feb. 5, 2026) (citing *O.F.B. v. Maldonado*, No. 25-cv-6336, 2025 WL 3277677, at \*7 (E.D.N.Y. Nov. 25, 2025)). As discussed, Respondents failed to provide Petitioner with the process set forth in 8 C.F.R. § 212.5(e) prior to revoking Petitioner's parole and re-detaining him. Accordingly, the third *Mathews* factor favors Petitioner.

ORDER – 10

In sum, all three *Mathews* factors favor Petitioner. The Court therefore concludes that Respondents' detention of Petitioner violates his procedural due process rights. Because the Court grants Petitioner's petition based on procedural due process, it will not reach Petitioner's remaining arguments.

### D.    Remedy

Petitioner asks that Court to order his immediate release from custody and to enjoin his re-detention absent certain circumstances. Dkt. # 17 at 21. Respondents do not indicate any opposition to the requested form of relief. *See generally* Dkt. # 10, 20.

The Court concludes that an order of immediate release is the appropriate remedy in this case given the "constitutional defects underlying [Petitioner's] re-detention without any meaningful individualized review performed by Respondents." *Telenchana*, 2026 WL 696806, at \*13. In addition, the Court finds, based on Respondents' conduct in this case and in numerous other cases in this district alone, there is "a clear pattern of re-detention without sufficient process by Respondents, demonstrating that [Petitioner] face a continuing threat of similar harm throughout [his] removal proceedings." *Id.*, at \*14. Accordingly, the Court will prohibit Petitioner's re-detention absent adequate notice and an opportunity to be heard, as described below.

//
//
//
//
//
//
//
//
//
//
//

ORDER – 11

## V.    CONCLUSION

For the forgoing reasons, the Court **GRANTS** Petitioner's First Amended Petition for Writ of Habeas Corpus, Dkt. # 17.  The Court **ORDERS** that Respondents:

(1)    Shall immediately release Petitioner from custody;

(2)    Shall file with the Court a notice within 2 business days confirming Petitioner's release; and

(3)    Shall not re-detain Petitioner unless and until Respondents provide him with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.

Dated this 20th day of April, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 12